David N. Lake, State Bar No. 180775
  *david@lakelawpc.com*
**LAW OFFICES OF DAVID N. LAKE,**
  **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990

**FILED**

Apr 20 2021
2:17 pm

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY      s/ emilybl      DEPUTY

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE EGROVICH, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CCFG COSTEBELLE LA JOLLA, | ) |
| LLC, a California limited liability | ) |
| company; ALAN LEWIS, an | ) |
| individual; CRAIG CECILIO, an | ) |
| individual; DOES 1 through 10, | ) |
| inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**'21 CV0774 TWR MDD**

**COMPLAINT FOR:**

1. **BREACH OF CONTRACT;**
2. **BREACH OF PERSONAL GUARANTEES;**
3. **INTENTIONAL MISREPRESENTATION;**
4. **FRAUDULENT CONCEALMENT;**
5. **FALSE PROMISE**

**JURY TRIAL DEMANDED**

Plaintiff, Joanne Egrovich, by and through her attorneys, complains against defendants as follows:

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

1.     Plaintiff Joanne Egrovich came across a project and the loan at issue in this case through a crowdfunding site in early 2017.  The proposed transaction appeared rather simple and straightforward – Ms. Egrovich would lend money on a short-term basis to an entity known as CCFG Costebelle La Jolla LLC ("Costebelle") for use in connection with its ongoing construction project in La Jolla, California.  The project was a multi-million dollar custom built, ocean view home situated in one of the most desirable communities in all of California, if not the United States of America, with an address of 7930 Costebelle Way, La Jolla, CA 92037 (the "Property").

2.     The project had already begun and was in need of additional capital (in the form of a short-term loan) to complete the construction and bring the Property to market for sale.  Ms. Egrovich, after becoming interested in the project and wanting to look into it more, engaged in discussions with Costebelle's principal Alan Lewis ("Lewis").

3.     In addition to Ms. Egrovich's potential loan, Costebelle told Ms. Egrovich it intended to finance its acquisition and renovation of the Property with a senior secured loan made by an entity known as Genesis Capital Master Fund II, LLC ("Genesis") in the amount of $4.2 million.

4.     The initial draft of Ms. Egrovich's loan and security documentation was prepared by Lewis.  The loan is evidenced by a Promissory Note Secured by Deed of Trust dated effective March 1, 2017, which was executed by Costebelle on April 11, 2017 in the amount of $750,000 (the "Note").  The original maturity date for the Note was December 31, 2017.  The Note called for Plaintiff to be repaid her full principal ($750,000) plus the greater of: (i) thirty percent (30%)

interest per annum on the outstanding principal balance or (ii) one hundred fifty thousand dollars ($150,000) on the maturity date of the Note.

5.     Plaintiff's loan of $750,000 was to be in second position behind only the Genesis $4.2 million first.  Accordingly, the Note was secured by a Second Trust Deed and Assignment of Rents effective March 1, 2017 (a date on or about the date of the closing of Ms. Egrovich's loan), which was executed by Costebelle and notarized with the notary acknowledgement dated April 11, 2017 (the "TD").

6.     Ms. Egrovich's loan was also guaranteed pursuant to an Unconditional Guaranty dated effective March 1, 2017 (the "Guaranty") executed by Defendant Lewis as well as defendant Craig Cecilio ("Cecilio") (collectively, the "Guarantors").

7.      It became clear as the maturity date on the Note (December 31, 2017) approached that Costebelle would need more time to complete its renovation of the project and market the Property for sale.  Simply put, the Property would not be ready for sale and, as such, Costebelle and the Guarantors needed to push the maturity date on the Note out a bit further to allow for this.

8.     Consequently, Costebelle, the Guarantors and Ms. Egrovich entered into an Amendment to Loan Documents and Confirmation of Guaranty dated January 25, 2018 ("Extension Agreement").  The Extension Agreement extended the term of the Note until April 30, 2018 and called for an additional payment of $15,000 to be made to Plaintiff on the earlier of the repayment of the loan or April 30, 2018.  No other changes were made to the Note.  The Extension Agreement also confirmed the Guaranty.

9.     Ms. Egrovich's loan was always intended to be secured by second trust deed on the Property.  Plaintiff had been told that Costebelle would take a $4.2 million construction loan (the "First Genesis Loan") from Genesis.  The documents evidencing the First Genesis Loan included a Promissory Note dated February 16, 2017 (the "First Genesis Note") and a Construction Deed of Trust

which had been recorded with the San Diego County Recorder on March 6, 2017 (as instrument number 2017-0102620) ("Genesis $4.2M TD").  All of the documents evidencing the First Genesis Loan are referred to herein as the "Genesis Loan Documents."

10.     After Ms. Egrovich made her loan in March 2017 and unbeknownst to her, Costebelle, the Guarantors and Genesis agreed to additional funds being lent such that the principal amount borrowed by Costebelle increased from $4.2 million to $4.955 million (the "Second Genesis Note").  The Second Genesis Note was secured by a Construction Deed of Trust which was recorded with the San Diego County Recorder's Office on December 11, 2017 (as instrument number 2017-0575162) (the "Genesis $4.955M TD").  As part of this plan, Costebelle and the Guarantors delayed the recording of the TD, recording it only after the Genesis $4.955M TD had been recorded, thereby placing the entire $4.955 million owed to Genesis (as opposed to the $4.2 million) ahead of Plaintiff's loan and security interest.

11.     The interest rate on Ms. Egrovich's Note was what would be considered facially usurious under California law (more than 10% per annum).  To address this, language was inserted which was intended to make the loan exempt from California's usury laws.  Specifically, language was prepared and inserted into the Guaranty stating that Cecilio, a Costebelle member and manager and licensed real estate broker, had "arranged" the loan between Costebelle and Plaintiff.  Cecilio signed the Guaranty which included this language under a representation and warranty.

12.     In addition, language was put in the Guaranty to preserve Ms. Egrovich's right to recover the full interest due under the loan (even if determined to be usurious) from the Guarantors regardless of whether she could do so from Costebelle.  On information and belief, this language was intended to effectuate a

waiver of any usury claims or defenses by the Guarantors even in the face of a potentially successful usury claim or defense by Costebelle.

13.     Costebelle defaulted under Ms. Egrovich's Note when it failed to repay what was due to Egrovich by the extended maturity date of April 30, 2018.

14.     Written demand for payment was made upon Costebelle and the Guarantors in May 2018.  Costebelle and the Guarantors have not paid, have stated clearly that they are unable to pay and, in fact, have also stated they are not going to pay the agreed-upon interest rate.

15.     Genesis issued a Notice of Default and Election to Sell on December 30, 2019 (the "NOD").  The NOD was recorded with the San Diego County Recorder on January 2, 2020 as instrument number 2020-0001218.  The NOD stated that Genesis was owed $5,642,885.77 as of December 30, 2019.  Costebelle did not cure the default and, in July 2020, a foreclosure sale was conducted and a Trustee's Deed Upon Sale Recorded with the San Diego County Recorder on July 24, 2020 as instrument number 2020-0401930 (the "Trustee's Deed").

16.     Per the Trustee's Deed, the Property was transferred to Goldman Sachs Bank USA (which on information and belief is the owner or an affiliate of Genesis).  At the time of the transfer, the amount of unpaid debt with costs owed to Genesis was more than $6.2 Million.  However, the sum paid to acquire the Property at the trustee's foreclosure sale was only $4,414,743.33.  As such, there were insufficient funds to fully satisfy Genesis' debt and no money to pay Plaintiff, whose second position security interest in the Property was wiped out by the foreclosure.

17.     To date, Plaintiff has not been repaid any of her principal loan ($750,000), the extension fee or any interest on the loan whatsoever.  In addition to not being paid what she is owed, Plaintiff has been forced to incur attorneys' fees and costs pursuing repayment.  Per the Note and Guaranty, Plaintiff is also entitled to recover these attorneys' fees and costs.

**THE PARTIES**

18.    Plaintiff Joanne Egrovich ("Plaintiff" or "Ms. Egrovich") is, and at all times relevant hereto was, an individual residing in the State of New York.

19.    Plaintiff is informed and believes, and based thereon alleges, that defendant CCFG Costebelle La Jolla, LLC ("Costebelle") is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of California and which conducted business throughout California, including in Los Angeles County, California.

20.    Plaintiff is informed and believes, and based thereon alleges, that defendant Alan Lewis ("Lewis") is, and at all times relevant hereto was, an individual residing in the State of California, County of San Diego, and a member and manager of Costebelle.

21.    Plaintiff is informed and believes, and based thereon alleges, that defendant Craig Cecilio ("Cecilio") is, and at all times relevant hereto was, an individual residing in the State of California, County of San Diego, and a member and manager of Costebelle.

22.    Plaintiff presently is unaware of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

23.    Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this Complaint, and Plaintiff's damages as alleged herein were proximately caused by their conduct.  To the extent of any limited liability company or corporate defendant's wrongful conduct, it is believed that any such defendant's managers, corporate officers, and directors ratified and approved any wrongful conduct alleged in this complaint, or were directly responsible for perpetrating such conduct.

24.     Plaintiff is informed and believes, and on that basis alleges, that each of the defendants named herein is, and at all times relevant herein was, a party to the unlawful acts and omissions complained of herein and acted in concert or combination with each of the other defendants with respect to the actions and matters described in this Complaint or has aided and abetted such other defendants with respect thereto.

25.     Plaintiff is further informed and believes, and based thereon alleges, that Costebelle is, and at all relevant times herein mentioned was, a mere shell and sham without capital, assets, stock or interest holders.  Costebelle was used by Lewis and Cecilio as a device to avoid individual liability and for the purpose of substituting a financially insolvent entity in their place.  Plaintiff is informed and believes, and based thereon alleges, that at no time after Costebelle was formed was any membership interest authorized to be issued or issued.

26.     In addition, Costebelle is, and at all times mentioned herein was, so inadequately capitalized that, compared with the business done by Costebelle and the risks of loss attendant thereon, its capitalization was illusory or trifling.  At the time of this filing, Costebelle is in suspended status with the California Secretary of State and, on information and belief, has been in suspended status for some time.

27.     Plaintiff is further informed and believes, and based thereon alleges, that Lewis and Cecilio used assets of Costebelle for their personal use and to fund or pay obligations of other entities or business ventures they owned, caused assets of the entity to be transferred without adequate consideration, and withdrew funds from the entity's bank accounts for their personal use and for use by other entities they owned or controlled.  Claimant is informed and believes, and based thereon alleges, that Lewis and Cecilio used Costebelle's assets to pay personal and other business expenses unrelated to Costebelle's business.

28.     Lewis and Cecilio completely controlled, dominated, managed, and operated Costebelle and commingled their personal and corporate assets to suit the convenience of defendants and by placing Costebelle's assets in the names of others to evade payment of the obligations owed to creditors of Costebelle. Costebelle is, and at all times mentioned herein was, controlled, dominated, and operated by Lewis and Cecilio as their individual business and alter ego, in that the activities and business of Costebelle were carried out without holding of members' or managers' meetings, no records or minutes of any corporate proceedings were maintained, and Lewis and Cecilio entered into transactions with Costebelle or on behalf of Costebelle without the approval of other directors or members.

29.     Adherence to the fiction of the separate existence of Costebelle as an entity distinct from Lewis and Cecilio would permit an abuse of the corporate privilege and would sanction fraud and promote injustice, all to the irreparable damage and injury of Plaintiff, which will affect Plaintiff's ability to recover and enforce a judgment.

**JURISDICTION AND VENUE**

30.     The jurisdiction of this Court is invoked under 28 U.S.C. §1332, this being an action between a New York Plaintiff and California Defendants. The amount in controversy under each claim is in excess of $75,000, exclusive of interest and costs.

31.     Venue is properly located in the Southern District of California because the claims in controversy – involving contract breaches and torts – were consummated or took place in San Diego and each of the defendants is domiciled in San Diego as well.

///

**FIRST CLAIM FOR RELIEF**

(Breach of Contract - Written)

(Against Costebelle and Certain Doe Defendants)

32.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 31, inclusive, and incorporates them as though fully set forth herein.

33.     Costebelle and Plaintiff executed a written Promissory Note pursuant to which Plaintiff lent the principal sum of $750,000 to Costebelle in March 2017. In exchange for the loan, Costebelle agreed to repay by the maturity date the full amount of the principal plus the greater of: (i) thirty percent (30%) interest per annum on the outstanding principal balance or (ii) one hundred fifty thousand dollars ($150,000) on the maturity date of the Note.  The maturity date for the Note was December 31, 2017.

34.     As the maturity date on the Note (December 31, 2017) approached it became clear that Costebelle would need more time to complete its renovation of the project and market the Property for sale.  As such, Costebelle and the Guarantors needed to push the maturity date on the Note out a bit further. Consequently, Costebelle, the Guarantors and Ms. Egrovich entered into the Extension Agreement which extended the term of the Note until April 30, 2018. The Extension Agreement also called for Plaintiff to be paid $15,000 by the earlier of the repayment of the loan or April 30, 2018.

35.     Costebelle breached the Note when it failed to repay what was due to Egrovich by the extended maturity date.  Demand for payment was made upon Costebelle and the Guarantors.  Costebelle and the Guarantors have not paid, have stated clearly that they are unable to pay and, in fact, have also stated they are not going to pay the agreed-upon interest rate.

36.     Genesis issued a Notice of Default and Election to Sell on December 30, 2019 (the "NOD").  The NOD was recorded with the San Diego County

Recorder on January 2, 2020 as instrument number 2020-0001218.  The NOD stated that Genesis was owed $5,642,885.77 as of December 30, 2019.  Costebelle did not cure the default and, in July 2020, a foreclosure sale was conducted and a Trustee's Deed Upon Sale Recorded with the San Diego County Recorder on July 24, 2020 as instrument number 2020-0401930 (the "Trustee's Deed").

37.     Per the Trustee's Deed, the Property was transferred to Goldman Sachs Bank USA (which on information and belief is the owner or an affiliate of Genesis).  At the time of the transfer, the amount of unpaid debt with costs owed to Genesis was more than $6.2 Million.  However, the sum paid to acquire the Property at the trustee's foreclosure sale was only $4,414,743.33.  As such, there were insufficient funds to fully satisfy Genesis' debt and no money to pay Plaintiff, whose second position security interest in the Property was wiped out by the foreclosure.

38.     To date, Plaintiff has not been repaid any of her principal loan ($750,000), the $15,000 extension fee or any interest on the loan whatsoever.  In addition to not being paid what she is owed, Plaintiff has been forced to incur attorneys' fees and costs pursuing repayment.  Per the Note and Guaranty, Plaintiff is also entitled to recover these attorneys' fees and costs.

39.     Plaintiff has performed all conditions, covenants, and promises required on her part to be performed, in accordance with the terms and conditions of the Note, except those which have been waived, excused or made impossible to be performed by Costebelle.

40.     Notwithstanding, Costebelle has breached the Note by, among other things, failing to pay Plaintiff the principal and interest she is due under the Note and the extension fee.

41.     As a direct result of the above breaches by Costebelle, Plaintiff has suffered the loss of benefits to which she was entitled under the Note and incurred damages as a result.  As a direct and proximate result of Costebelle's breaches of

the Note, Plaintiff has suffered and will suffer damages in excess of the jurisdictional minimum of this Court, subject to proof at trial, but in an amount no less than $765,000.  Plaintiff will pray for leave to amend her complaint when the precise amount of said damages has been ascertained, together with interest thereon at the legal rate from the date said damages were suffered.

**SECOND CLAIM FOR RELIEF**

(Breach of Guaranty - Written)

(Against Lewis, Cecilio and Certain Doe Defendants)

42.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 41, inclusive, and incorporates them as though fully set forth herein.

43.    Costebelle and Plaintiff executed a written Promissory Note pursuant to which Plaintiff lent the principal sum of $750,000 to Costebelle in March 2017. In exchange for the loan, Costebelle agreed to repay by the maturity date the full amount of the principal plus the greater of: (i) thirty percent (30%) interest per annum on the outstanding principal balance or (ii) one hundred fifty thousand dollars ($150,000) on the maturity date of the Note.  The maturity date for the Note was December 31, 2017.

44.    Ms. Egrovich's loan was also guaranteed pursuant to a Guaranty executed by Defendants Lewis and Cecilio (collectively, the "Guarantors").  Per the Guaranty, the Guarantors jointly, severally, unconditionally and irrevocably guaranteed full and prompt payment of all indebtedness under the Note and TD, including without limitation all interest on the Note.  It was further agreed the liability of the Guarantors would not be discharged or satisfied unless and until Plaintiff received full performance of Costebelle's indebtedness under the Note with interest.

45.    The Guaranty was a continuing unconditional guaranty of payment and performance of the Note and the Guarantors waived any right to require

Plaintiff to proceed against Costebelle, proceed against or exhaust any security held by Plaintiff, or pursue any other remedy.

46.     Per the Guaranty, the Guarantors further waived all statutes of limitation as a defense to any action brought by Plaintiff against them as well as other defenses, including any defenses that could be raised by Costebelle as the borrower.

47.     As the maturity date on the Note (December 31, 2017) approached it became clear that Costebelle would need more time to complete its renovation of the project and market the Property for sale.  As such, Costebelle and the Guarantors needed to push the maturity date on the Note out a bit further. Consequently, Costebelle, the Guarantors and Ms. Egrovich entered into the Extension Agreement which extended the term of the Note until April 30, 2018. The Extension Agreement also called for Plaintiff to be paid $15,000 by the earlier of the repayment of the loan or April 30, 2018.

48.     Costebelle breached the Note when it failed to repay what was due to Egrovich by the extended maturity date.  Demand for payment was made upon Costebelle and the Guarantors.  Costebelle and the Guarantors have not paid, have stated clearly that they are unable to pay and, in fact, have also stated they are not going to pay the agreed-upon interest rate.

49.     Genesis issued a NOD which was recorded with the San Diego County Recorder on January 2, 2020 as instrument number 2020-0001218.  The NOD stated that Genesis was owed $5,642,885.77 as of December 30, 2019. Costebelle did not cure the default and, in July 2020, a foreclosure sale was conducted and a Trustee's Deed recorded.

50.     Per the Trustee's Deed, the Property was transferred to Goldman Sachs Bank USA (which on information and belief is the owner or an affiliate of Genesis).  At the time of the transfer, the amount of unpaid debt with costs owed to Genesis was more than $6.2 Million.  However, the sum paid to acquire the

Property at the trustee's foreclosure sale was only $4,414,743.33.  As such, there were insufficient funds to fully satisfy Genesis' debt and no money to pay Plaintiff, whose second position security interest in the Property was wiped out by the foreclosure.

51.    To date, Plaintiff has not been repaid any of her principal loan ($750,000), the $15,000 extension fee or any interest on the loan whatsoever.  In addition to not being paid what she is owed, Plaintiff has been forced to incur attorneys' fees and costs pursuing repayment.  Per the Note and Guaranty, Plaintiff is also entitled to recover these attorneys' fees and costs.

52.    Plaintiff has performed all conditions, covenants, and promises required on her part to be performed, in accordance with the terms and conditions of the Note and Guaranty, except those which have been waived, excused or made impossible to be performed by Costebelle, Lewis and/or Cecilio.

53.    Notwithstanding, the Guarantors have breached the Guaranty by, among other things, failing to pay Plaintiff the principal and interest she is due under the Note.

54.    As a direct result of the above breaches by Lewis and Cecilio, Plaintiff has suffered the loss of benefits to which she was entitled under the Note and incurred damages as a result.  As a direct and proximate result of Lewis and Cecilio's breaches of the Guaranty, Plaintiff has suffered and will suffer damages in excess of the jurisdictional minimum of this Court, subject to proof at trial, but in an amount no less than $765,000.  Plaintiff will pray for leave to amend her complaint when the precise amount of said damages has been ascertained, together with interest thereon at the legal rate from the date said damages were suffered.

///

**THIRD CLAIM FOR RELIEF**

(Intentional Misrepresentation)

(Against Lewis, Cecilio and Certain Doe Defendants)

55.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 54, inclusive, and incorporates them as though fully set forth herein.

56.     Cecilio represented and warranted, in writing in March 2017, that he was a duly licensed real estate broker in California and that acting pursuant to his real estate brokerage license he had arranged the aforementioned loan between Costebelle and Plaintiff as evidenced by the Note.  Lewis made these same representations and warranties to Plaintiff and Plaintiff's agent, also in or around March 2017 and during the time period leading up to execution of the Note and Guaranty and Plaintiff's loaning the money to Costebelle.

57.     Cecilio and Lewis were aware that the interest rate on the Note they had agreed to was usurious under California law and that without an applicable exception to the usury laws that rate of interest would not be enforceable or collectable by Plaintiff.  As such, in order to induce Plaintiff to make the loan – something she would not have done without the ability to be paid the agreed-upon interest rate as stated in the Note – Lewis and Cecilio represented and warranted that the loan was arranged by Cecilio for Costebelle acting pursuant to his real estate brokerage license.

58.     Notwithstanding these representations and warranties, in or around October 2019 Lewis and Cecilio took the position, in a writing sent to one of Plaintiff's representatives, that the interest rate they had agreed to for the Note was "illegal," the loan "predatory" and that no usury exemption applied because the representation and warranties made by Lewis and Cecilio regarding Cecilio's arranging the loan for Costebelle pursuant to his valid California real estate broker's license were untrue.  In short, Lewis and Cecilio had taken the position

that Plaintiff was not entitled to the agreed upon interest rate, or any interest on her loan whatsoever.

59.    Plaintiff is informed and believes, and based thereon alleges, that at the time Lewis and Cecilio made these representations and warranties about Cecilio's arranging the loan for Costebelle, they knew the representations were false or were made recklessly without regard for their truth.  In either case, Lewis and Cecilio intended for Plaintiff to rely on the representation when deciding to make the $750,000 loan.

60.    Plaintiff reasonably relied upon the foregoing representations by Lewis and Cecilio and did so to her detriment as Plaintiff would not have made the loan without the right to collect the agreed upon interest.

61.    As already noted, the falsity of Lewis and Cecilio's representations about "arranging" the loan for Costebelle pursuant to his real estate license did not become known to Plaintiff until October 2019, well after the Note and Guaranty were executed, the loan funded, and the extended maturity date had passed.

62.    This was a complete reversal of Lewis and Cecilio's position and the representations they made to Plaintiff at the time Plaintiff made the loan – representations Plaintiff reasonably relied upon in deciding to make the loan in the first instance.

63.    Lewis and Cecilio are, by virtue of the foregoing, guilty of oppression, fraud and/or malice, and have acted in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.  Lewis and Cecilio not only made material misrepresentations of fact calculated to induce Plaintiff's reliance and her making the loan with the expectation of being repaid with interest at the agreed upon rate, they did so knowing they would eventually take a contrary position and falsely deny the loan was arranged under the applicable usury exception (of arranging a loan by a licensed real estate broker)

which they would later proffer as a basis for not having to pay Plaintiff any interest on her loan.

64.    Plaintiff's conduct is despicable, was carried out with full advance knowledge of the true facts and circumstances and the ultimate knowledge that Plaintiff was being deceived.  Therefore, in addition to actual compensatory damages, Plaintiff is entitled to recover exemplary and punitive damages from both Lewis and Cecilio in such amount as proof at trial may indicate is appropriate.

## FOURTH CLAIM FOR RELIEF

### (Fraudulent Concealment)

### (Against Lewis, Cecilio and Certain Doe Defendants)

65.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 64, inclusive, and incorporates them as though fully set forth herein.

66.    The Note and TD reflect that Plaintiff's loan to Costebelle was for use in connection with its ongoing construction project at the Property in La Jolla, California.  The project had already begun and needed additional capital (in the form of a short-term loan) to complete the construction and bring the Property to market for sale.

67.    In addition to Ms. Egrovich's potential loan, Costebelle intended to finance its acquisition and renovation of the Property with a senior secured loan made by Genesis in the amount of $4.2 million.

68.    The original maturity date for the Note was December 31, 2017.  The Note called for Plaintiff to be repaid her full principal ($750,000) plus the greater of: (i) thirty percent (30%) interest per annum on the outstanding principal balance or (ii) one hundred fifty thousand dollars ($150,000) on the maturity date of the Note.

69.     The $4.2 million loan from Genesis was known to Plaintiff and her loan of $750,000 was to be in second position behind only the Genesis $4.2 million first.  Accordingly, the Note was secured by the TD, which was executed by Costebelle and notarized with the notary acknowledgement dated April 11, 2017.

70.     As the maturity date on the Note (December 31, 2017) approached it became clear that Costebelle would need more time to complete its renovation of the project and market the Property for sale.  In other words, the Property would not be ready for sale and, as such, Costebelle and the Guarantors needed to push the maturity date on the Note out a bit further.  Consequently, Costebelle, the Guarantors and Ms. Egrovich entered the Extension Agreement which extended the term of the Note until April 30, 2018.

71.     Ms. Egrovich's loan was always intended to be secured by second trust deed on the Property.  Costebelle would take a $4.2 million construction loan from Genesis, the First Genesis Loan.  The documents evidencing the First Genesis Loan included the First Genesis Note and the Genesis $4.2M TD recorded with the San Diego County Recorder on March 6, 2017 (as instrument number 2017-0102620).  The Genesis Loan Documents were provided to Plaintiff by Lewis prior to her making the loan to Costebelle and those documents were consistent with what Plaintiff and her representatives had been told by Lewis and Cecilio regarding the First Genesis Loan.  Costebelle borrowed $4.2 million from Genesis and this sum would be secured by a first position deed of trust on the Property.

72.     After Ms. Egrovich made her loan, and unbeknownst to her, Costebelle, the Guarantors and Genesis agreed to the Second Genesis Note whereby additional funds were lent to Costebelle such that the principal amount borrowed by Costebelle increased from $4.2 million to $4.955 million.  The

Second Genesis Note was secured by the Genesis $4.955M TD which was recorded with the San Diego County Recorder's Office on December 11, 2017.

73.     The Second Genesis Note and the Genesis $4.955M TD were secured and put in place by Costebelle and the Guarantors in secret, without notice to or permission from Plaintiff, and before Plaintiff's TD was recorded.  As a result, Ms. Egrovich's loan was now behind not just $4.2 million in priority debt, but $4.955 million, placing her further down the list that she otherwise would have been had her TD been recorded either concurrently with her loan or anytime during the months leading up to the Genesis $4.955M TD.

74.     Plaintiff is informed and believes, and based thereon alleges, that Lewis and Cecilio knew when they were in discussions with Plaintiff about her loan that they would need more than the $4.2 million they had secured from Genesis.  On further information and belief, Lewis and Cecilio also had either already begun discussions to secure additional funds from Genesis or used Plaintiff's loan in order to show Genesis additional funds were being lent and in order to secure the additional monies from Genesis which, in either case, would all be secured by a first position trust deed on the Property, thereby putting Plaintiff behind not just $4.2 million in priority debt, but $4.955 million.

75.     Lewis and Cecilio chose to disclose only some of the facts regarding Genesis' loan to Plaintiff and knowingly and intentionally failed to disclose the facts regarding the increased sum they would be seeking and that this increased, not the $4.2 million, would occupy the first position lien on the Property.  These facts were known only to Lewis and Cecilio, could not have been discovered by Plaintiff, and Plaintiff was unaware of them when she agreed to loan the money pursuant to the Note.

76.     Lewis and Cecilio intended to deceive Plaintiff by concealing these facts regarding Genesis' loan and security interest which were material and had they been disclosed would have resulted in Plaintiff not making the loan at all.

However, Plaintiff made the loan and did so based on partial facts as selectively chosen by Lewis and Cecilio who knowingly withheld and concealed the aforementioned material information, something she would not have done but for Lewis and Cecilio's concealment.

77. Plaintiff was harmed as a direct result of Lewis and Cecilio's concealment as she made the loan (something she would not have otherwise done) which has not been repaid, in either whole or part.

78. Lewis and Cecilio are, by virtue of the foregoing, guilty of oppression, fraud and/or malice, and have acted in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages. Lewis and Cecilio were privy to material information concerning Genesis' loan and, although they revealed some information concerning it, they knowingly and intentionally concealed other material facts from Plaintiff (to wit that the Genesis loan was not in fact $4.2 million but had, or was in negotiations to be, increased by $750,000 – facts which only Lewis and Cecilio were privy to and which Plaintiff did not know and could not have reasonably discovered). Thus, Lewis and Cecilio induced Plaintiff to make the loan, something she would not have done had the full truth been revealed.

79. Defendants' conduct is despicable, was carried out with full advance knowledge of the true facts and circumstances and the ultimate knowledge that Plaintiff was being deceived. Therefore, in addition to actual compensatory damages, Plaintiff is entitled to recover exemplary and punitive damages from both Lewis and Cecilio in such amount as proof at trial may indicate is appropriate.

///

# FIFTH CLAIM FOR RELIEF

### (False Promise)

### (Against Lewis, Cecilio and Certain Doe Defendants)

80.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 79, inclusive, and incorporates them as though fully set forth herein.

81.     Lewis and Cecilio promised, orally and in writing during February and March 2017 leading up to Plaintiff's loaning the money, that if Plaintiff made the loan they were seeking, she would have the additional security of repayment via their obtaining a recapitalization loan ("Recap Loan") for the Property within thirty (30) days of Plaintiff requesting they do so and that the Recap Loan would be used to pay Plaintiff her full outstanding principal and accrued interest balance on her loan.  These promises were made to Plaintiff both directly and through her authorized representative.

82.     Lewis and Cecilio, during this same time period and using these same methods of communication, further promised that in the event the Recap Loan funds were insufficient to pay Plaintiff her full outstanding principal and accrued interest balance on her loan, that they would pay any shortfall within sixty (60) days by a combination of: (a) a recapitalization loan of the property located at 730 Balboa Avenue, Coronado, CA; and/or (b) a recapitalization loan of the property located at 7835 Monterra Oaks Road, Monterey, CA; and/or (c) a loan to Plaintiff from CCFG Investment Fund, LLC, an affiliate of the borrower CCFG.

83.     In furtherance of the plan, and to further induce Plaintiff's reliance, Lewis, both telephonically and in writing during February and March 2017 leading up to Plaintiff's loaning the money, repeated these promises and provided Plaintiff with information about the loans relating to the Coronado and Monterey properties, touted their appraised values and the substantial excess proceeds that would exist upon the recapitalization of those loans.

84.     Plaintiff reasonably relied upon the foregoing promises by Lewis and Cecilio and did so to her detriment as Plaintiff would not have made the loan without these promises and assurances.

85.     Neither Lewis nor Cecilio intended to perform these promises when they made them, but they intended for Plaintiff to rely on the promises they had made.

86.     Plaintiff reasonably relied on the promises, which were repeated in writing in the Promissory Note, and loaned the money to Borrower in March 2017.

87.     Lewis and Cecilio, however, did not perform their promised acts.  In fact, both the Coronado and Balboa properties were unavailable and eventually sold to third parties, placing them beyond Lewis and Cecilio's control.  In addition, the CCFG Investment Fund, LLC which Lewis and Cecilio controlled ceased operating and was likewise unavailable to meet the obligation as promised.

88.     Plaintiff's reliance on the aforementioned promises was a substantial factor in causing Plaintiff's harm.

89.     Plaintiff suffered harm as a result of Lewis and Cecilio's promises in that when the time came to repay Plaintiff, not only has the Property been foreclosed upon and the Recap Loan funds non-existent, but none of the backstops of: (a) a recapitalization loan of the property located at 730 Balboa Avenue, Coronado, CA; and/or (b) a recapitalization loan of the property located at 7835 Monterra Oaks Road, Monterey, CA; and/or (c) a loan to Plaintiff from CCFG Investment Fund, LLC, an affiliate of the borrower CCFG, were available either as they had been either dissipated, sold or closed by Lewis and Cecilio.

90.     Lewis and Cecilio engaged in the above conduct with malice, oppression, or fraud.  Lewis and Cecilio were made keenly aware of Plaintiff's concerns about being repaid and there be multiple avenues for her to see that she was, and knowing this they promised her the backstops of: (a) a recapitalization loan of the property located at 730 Balboa Avenue, Coronado, CA; and/or (b) a

recapitalization loan of the property located at 7835 Monterra Oaks Road, Monterey, CA; and/or (c) a loan to Plaintiff from CCFG Investment Fund, LLC, an affiliate of the borrower CCFG, in order to induce her to make the loan of $750,000.  Lewis and Cecilio had complete control over these backstops, dangled them as inducements to Plaintiff, but never intended on performing on the promises they made.

WHEREFORE, Plaintiff prays for judgment as follows:

1. For compensatory damages;
2. For special damages;
3. For reasonable attorneys' fees where recoverable;
4. For punitive damages pursuant to Civil Code §3294 wherever recoverable;
5. For statutory prejudgment interest at the maximum rate permitted by law;
6. For costs of suit incurred herein; and
7. For any and all other relief as the court deems just and proper.

DATED: April 19, 2021                LAW OFFICES OF DAVID N. LAKE

                                     By: _____
                                          DAVID N. LAKE
                                          Attorneys for Plaintiff