UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE EGROVICH, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>CCFG COSTEBELLE LA JOLLA, LLC, a California limited liability company, et al.,<br><br>    Defendant. | Case No.:  21-CV-774 TWR (MDD)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING AS MOOT MOTION FOR WRIT OF ATTACHMENT**<br><br>**(ECF No. 13, 14)** |

Plaintiff Joanne Egrovich moves for a writ of attachment and partial summary judgment. (ECF Nos. 13, 14.) Defendants Alan Lewis and Craig Cecilio oppose, ("Opp'n," ECF No. 15), and Egrovich has replied. ("Reply," ECF No. 16.) For the reasons set forth below, the Court **GRANTS** the motion for partial summary judgment and **DENIES AS MOOT** the motion for a writ of attachment.

### BACKGROUND

This case is about a loan that was never repaid. Plaintiff Joanne Egrovich, a New York citizen, loaned $750,000 to CCFG Costebelle La Jolla, LLC, to further a construction project for a multi-million-dollar, custom built home in La Jolla, California. (ECF No. 13-2, "Egrovich Decl." ¶ 2.) By the time Egrovich made the loan, the construction project was already underway, but more capital was needed to complete and market the property.

(*Id.* ¶ 3.)  Egrovich began talking with CCFG's principal, Alan Lewis, who was the co-founder and Chief Investment Officer of DiversyFund, Inc., an online, tech-based financial literacy platform that raises money for real estate "primarily in large portfolios of existing commercial real estate assets." (*Id.* ¶ 3; ECF No. 15-2, "Lewis Decl." ¶ 4–5.) DiversyFund managed CCFG. (Lewis Decl. ¶ 6.) Eventually, the talks materialized, and Lewis prepared the initial draft of the loan. (Egrovich Decl. ¶ 3.)  The parties signed a Promissory Note, effective March 1, 2017, for a loan of $750,000. (*Id.* ¶ 4.)  Craig Cecilio, the co-founder and CEO of DiversyFund, executed the Note. (*Id.*)  The loan was guaranteed by Lewis and Cecilio, as evidenced by the Unconditional Guaranty.  (*Id.* ¶ 5; ECF No. 14-3.)   By December 31, 2017, CCFG was required to pay the full principal amount of $750,000, plus the greater of:  (1) thirty percent (30%) interest per annum on the outstanding principal balance; or (2) one hundred fifty thousand dollars ($150,000) on the maturity date of the Note.  (*Id.* ¶ 4.)  As the maturity date approached, CCFG needed more time to finish renovating the custom-built home, so CCFG, the Guarantors, and Egrovich executed an Extension Agreement, which allowed four additional months, until April 30, 2018, to repay the loan in full. (*Id.* ¶ 6; ECF No. 14-4.)  Cecilio executed the Extension Agreement on behalf of DiversyFund and both Defendant Guarantors.  (*Id.*)

But things did not go according to plan.  CCFG defaulted, and it could not repay its loans by the new deadline of April 30, 2018. (*Id.* ¶ 7.)  Although the loan was secured by a Deed of Trust against the Property, the Note was—and remains—unsecured because the first position lender, Genesis Capital, issued a Notice of Default and Election to Sell on December 30, 2019, which was recorded with the San Diego County Recorder.  (*Id.* ¶ 8.) According to the Note, Genesis Capital was owed $5,642,885.77, and since CCFG could not cure the default, a foreclosure sale took place. (*Id.* ¶ 8.) In July 2020, a Trustee's Deed Upon Sale was recorded with the San Diego County Recorder, and the property was transferred to Goldman Sachs Bank USA. (*Id.* ¶ 9.) At the time of this transfer, CCFG owed Genesis $6.2 million, and the foreclosure sale was $4,414,743.33.  (*Id.*)  Egrovich has not been paid back for her original loan, and since the foreclosure sale generated less

money than was owed to Genesis, Egrovich moves for a writ of attachment to ensure that she can recover on her claims against Lewis and Cecilio. (*Id.* ¶¶ 9–10.) She also asserts several causes of action against Lewis and Cecilio directly, including a breach of guaranty. She now moves for partial summary judgment on that claim.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt

as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *see also Anderson*, 477 U.S. at 248. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Egrovich moves for summary judgment on the breach of guaranty claim and seeks a writ of attachment in the sum of $765,000. Those motions are addressed below.

**A. Motion for Summary Judgment – Breach of Guaranty**

In California, a breach of guaranty claim can be raised based on "undisputed evidence that (1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty." *First Am. Com. Bancorp, Inc. v. Vantari Genetics, LLC*, No. 219CV04483VAPFFM, 2020 WL 5027990, at *3 (C.D. Cal. Mar. 12, 2020) (citation omitted). The same standard for breach of contract applies here. *See Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1123 (C.D. Cal. 2015). In moving for summary judgment, Egrovich argues that there was a valid agreement for a loan of $750,000, the Defendants consented to the terms of that agreement, and although Egrovich performed her obligations under the contract, the Defendants did not. As a result, Egrovich was damaged and argues that there exists no triable issue on the underlying breach of guaranty claim. Defendants disagree, claiming that summary judgment should be denied because (1) the loan contained an illegal and unenforceable late charge, (2) the loan itself was usurious, (3) the affirmative defense of offset, (4) estoppel, and (5) unclean hands. The Court addresses each in turn.

/ / /
/ / /

**1. Late Charge**

According to the Defendants, the contract with Plaintiff contained an "illegal maturity late fee," which renders the entire contract void. Specifically, Defendants challenge the "Balloon late charge" provision, which states that "if any balloon payment is delinquent more than TEN days, the borrower will be charged a monthly late charge plus an additional monthly late charge for each month the balloon remains late." (Egrovich Decl. Ex. A.) Defendants emphasize that California Business & Professions Code § 10242.5 provides that a "charge shall not exceed an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due." Cal. Bus. & Prof. Code § 10242.5(c). Without explaining much further, Defendants argue Section 10242.5(c) renders the balloon late charge illegal, since the Promissory Note does not contain a late fee provision. (Opp'n at 6.) According to Defendants, because the balloon late charge is illegal, there is a triable issue of fact as to whether that illegality renders the Promissory Note and the Guarantees unenforceable. (Opp'n at 6–7.)

The Court finds the Defendants' argument to be without merit because of the provision in the Note which provides that any terms in the contract inconsistent with California law are "hereby modified to confirm to said law at the time of the signing of these loan documents." (ECF No. 14-1, Ex. A.) As such, the Note is "self-limiting" and cannot be properly construed as violative of California law. Indeed, it is well-settled that a court may sever certain provisions in a contract if the "illegality is collateral to the main purpose of the contract," and the operative portions of the contract are "wholly independent of the unlawful object." *MKB Mgmt., Inc. v. Melikian*, 184 Cal. App. 4th 796, 803, 108 Cal. Rptr. 3d 899, 905 (2010). Such is the case here. The central purpose of the contract at issue is the repayment of the $750,000 which Plaintiff loaned to the Defendants. Plaintiff has never sought to enforce the balloon late charge provision and a fair reading of the Note reveals that the balloon provision is collateral to the main purpose of the contract.

### 2. Usurious

Next, Defendants argue that summary judgment should not be granted because the underlying loan is usurious.  To assert a usury defense, the Defendants must show that: (1) the transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction,  See *Beechum v. Navient Sols., Inc.*, No. EDCV 15-8239-JGB-KKX, 2016 WL 5340454, at *4 (C.D. Cal. Sept. 20, 2016).  The usurious defense only applies to the collection of interest. *See Blue Growth Holdings Ltd. v. Mainstreet Ltd. Ventures, LLC*, No. CV 13-1452 CRB, 2013 WL 4758009, at *2 (N.D. Cal. Sept. 4, 2013) ("If a loan is found to be usurious, the lender may not collect interest.").  In other words, the usurious defense, "if successful, does not preclude Plaintiff's liability for the principal on the notes."  *t'Bear v. Forman*, 359 F. Supp. 3d 882, 911 (N.D. Cal. 2019); *see also In re Dominelli*, 820 F.2d 313, 318 n. 3 (9th Cir. 1987) ("Under California law, if a transaction is usurious, generally the interest provision of the loan is void, but the principal of the loan is unaffected.").  Here, Defendants cite several cases to argue that if the interest is usurious, Plaintiff cannot recover any of the interest. (Opp'n at 9.)  Defendants' interest-based usury argument misses the point because Plaintiff is merely seeking the *principal sum* and not the interest owed.[1]  As such, whether the loan is usurious or not has no bearing on the pending summary judgment motion.

/ / /

/ / /

---

[1]     None of the cases cited by Defendants prohibit the collection of the principal sum of the loan.  *See Gibbo v. Berger*, 123 Cal. App. 4th 396, 398, 19 Cal. Rptr. 3d 829, 830 (2004); *Hardwick v. Wilcox*, 11 Cal. App. 5th 975, 979, 217 Cal. Rptr. 3d 883, 886 (2017) ("'When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever."); *Dev. Acquisition Grp., LLC v. ea Consulting, Inc.*, 776 F. Supp. 2d 1161, 1165 (E.D. Cal. 2011) ("Under California's usury laws, DAG wrongfully charged EA interest on the Note in excess of 10% per annum and, as such, is entitled only to the original principal of $500,000."); *Creative Ventures, LLC v. Jim Ward & Assocs.*, 195 Cal. App. 4th 1430, 1444, 126 Cal. Rptr. 3d 564, 574 (2011).

### 3. Offset

Defendants also assert the offset defense to defeat summary judgment. In the Superior Court action against her attorneys, Plaintiff recovered "lost interest . . . per the terms of the Promissory Note dated March 1, 2017. . . and none of the Settlement Payment constitute[d] prepayment of Egrovich's principal investment of CCFG." (Egrovich Decl. Ex. E at 4.) Plaintiff received $550,000 from that settlement (Lewis Decl. ¶ 26), which Defendants argue should offset the principal amount at issue here and defeat summary judgment because there exist factual disputes about (1) "the nature, amount, and calculation of damages, if any;" and (2) "the nature, amount, and calculation of any offsets owed to Defendants." (Opp'n at 11–12.) Defendants argue that the offset applies even if the interest payment in the Superior Court action was made by a third party because Plaintiff should not receive *any* interest on the illegally usurious loan.

Defendants cite *Simmons v. Patrick*, 211 Cal. App. 2d 383, 390, 27 Cal. Rptr. 347, 352–53 (Ct. App. 1962), to support their claim that a payment made by a third party can offset their debt. In *Simmons,* the court found that "if someone pays usurious interest at the borrower's request for and on behalf of the borrower, it does not change the fact that the usurious interest has been paid by the borrower direct." *Id*. But that is not the case here. The payment made in the Superior Court action was not made on behalf of Lewis, Cecilio, DiversyFund, or CCFG. As Plaintiff points out, that payment was "compelled by litigation" and not done in response to the "borrower's request" or "on behalf of the borrower." Accordingly, *Simmons* is not instructive. Defendants also cite *Aspeitia v. California Tr. Co.*, 158 Cal. App. 2d 150, 154, 322 P.2d 265, 268 (1958), in support of their offset theory. But because the *Aspeitia* court merely reiterated the rule discussed in *Simmons* it also fails to meaningfully support Defendants' argument.

Defendants' offset argument fails for at least one other reason. As Plaintiff acknowledges, an offset may be allowed under Section 877 of the California Code of Civil Procedure for a settlement with "one or more joint tortfeasors," Cal. Civ. Proc. Code § 877, and "[w]hether individuals are joint tortfeasors . . . depends upon whether they caused 'one

indivisible injury' or 'the same wrong.'" *C.B. v. City of Sonora*, 769 F.3d 1005, 1031 (9th Cir. 2014). Here, Lewis and Cecilio were not joint tortfeasors with the defendants who settled in the Superior Court action. Indeed, as Plaintiff notes, the claims against Lewis and Cecilio are purely contractual and do not arise from tortious conduct on the Defendants' part. Moreover, the injuries in the Superior Court action and the case here are different and not part of "the same wrong." The Superior Court action involved claims of legal malpractice and breach of contract arising out of the defendant attorneys' representation of Plaintiff in connection with the loan transaction. In contrast, the instant case involves a loan that was never repaid. Since the offset principle is "to preclude a double recovery arising out of the same wrong," *Vesey v. United States*, 626 F.2d 627, 633 (9th Cir. 1980), it simply does not apply here.

### 4. Concurrent Jurisdiction

Defendants next argue that this court should not exercise jurisdiction because of estoppel. In particular, Defendants argue that because there is a similar case pending in the Los Angeles Superior Court, this Court should refrain from ruling on the summary judgment motion under the "first-to-file" rule. "The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). In deciding whether the first-to-file rule applies, the court must consider three factors: "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Id.* at 1240. Further, "courts should be driven to maximize 'economy, consistency, and comity.'" *Id.*

Here, none of those values will be served by applying the first-to-file rule. The Superior Court action appears to be complete; a Notice of Settlement was filed (ECF No. 16-9, Ex. Q), and though the Superior Court set a hearing for October 15, 2021, on an Order to Show Case Re. Dismissal (Settlement), the defendants filed a Request for Dismissal on October 12, 2021 and the hearing was subsequently vacated. *See* The Superior Court of California, County of Los Angeles, Online Services (Feb. 16, 2022, 1:40 PM),

https://www.lacourt.org/casesummary/ui/.  No future hearings have been set.  *Id*.  As a result, there appears no reason to deny summary judgment now as the Superior Court action appears to be complete and has no bearing on the merits of this case.  It would not maximize "economy, consistency, and comity."  So concurrent jurisdiction, or the first-to-file rule, does not apply.

### 5. Unclean Hands

Finally, Defendants try to overcome summary judgment by asserting the defense of unclean hands.  Defendants assert that they were forced to enter into the loan agreement and guaranty because they were placed "under financial duress."  (Opp'n at 14–15.)  According to the Defendants, when originally negotiating the terms of the loan, Egrovich knew that the existing lienholder was "threatening imminent foreclosure" and that "CCFG was in dire straights with no other alternative to procure construction financing in time to avoid foreclosure." (Opp'n at 15; Lewis Decl. ¶¶ 10, 15.)  And yet, on the eve of signing the loan documents, Egrovich "demanded substantial modifications to the investment terms" and "refused to invest unless CCFG agreed to a Promissory note with a 30% interest, a deed of trust encumbering the Property, and personal guaranties from Defendants." (Opp'n at 15.)  At that point, Defendants claim they had no time to look for other lenders and were essentially forced to sign the agreement.  (Lewis Decl. ¶ 16.)

"Economic duress can excuse an innocent party's contractual obligations when the other contracting party does 'a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'"  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1119 (9th Cir. 2018).  "Although the wrongful act at issue need not be a tort or a crime, it must be something more than 'a voluntary choice of perfectly legitimate alternatives.'"  *Quiksilver, Inc. v. Juelle*, No. CV093535AHMRNBX, 2010 WL 11520196, at *4 (C.D. Cal. Sept. 22, 2010).  "[A] reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." *Rich &*

*Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1159, 204 Cal. Rptr. 86, 89 (Ct. App. 1984).

Here, economic duress is inapplicable because Defendants have not produced evidence of a wrongful act. Instead, Plaintiff points to a series of emails starting from February 23, 2017, which suggest that the Defendants were not acting under duress. For example, in response to an email where Egrovich proposed the terms of the loan, which included the 30 percent interest rate, Defendant Alan Lewis wrote "Excited about the prospect of getting this done!" (ECF No. 16-18 at 4.) In another email sent that same day, Lewis wrote about the "Equity Kicker analysis on the sales price," again mentioning the 30 percent interest rate with no protest and ending the email by saying, "if that works for you, I think I can get the investors on board[,] and we have ourselves a deal!" (*Id.* at 2–3.) This does not resemble other situations where courts have found duress. *See In Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1161, 204 Cal. Rptr. 86, 91 (Ct. App. 1984) ("Rich strenuously protested Britton's and Aghadjian's coercive tactics, and succumbed to them only to avoid economic disaster to themselves and the adverse ripple effects of their bankruptcy on those to whom they were indebted.") Lastly, Lewis alleges that Egrovich modified the terms of the loan on the eve of the foreclosure, but it appears that the modification was only five percent, from 25 percent, which Lewis originally proposed (ECF No. 16-17 at 2), to 30 percent. (ECF No. 16-18.) "The fact that a plaintiff feels economic pressure to sign an agreement does not raise any inferences about a defendant's conduct, much less their wrongful conduct." *Osanitsch v. Marconi PLC*, No. CV 05-3988 CRB, 2009 WL 5125821, at *5 (N.D. Cal. Dec. 21, 2009). Without evidence of the wrongfulness of Egrovich's conduct, economic duress does not apply.

In sum, because Lewis and Cecilio have failed to raise a triable issue of fact regarding the breach of guaranty claim, the Court **GRANTS** Plaintiff's motion for summary judgment.

/ / /

/ / /

**B. Motion for a Writ of Attachment**

In addition, Plaintiff seeks a writ of attachment against Lewis and Cecilio for the amount of $765,000. (ECF No. 13 at 4.) Because the Court has granted Plaintiff's motion for summary judgement her request for the prejudgment remedy of a writ of attachment pursuant to Rule 64 of the Federal Rules of Civil procedure is **DENIED AS MOOT**.

## CONCLUSION

For the reason stated above, the Court **GRANTS** Plaintiff's motion for partial summary judgment and **DENIES AS MOOT** Plaintiff's motion for a writ of attachment.

**IT IS SO ORDERED.**

Dated: February 16, 2022

Honorable Todd W. Robinson
United States District Judge